ERVIN, Judge.
Appellants, Maurice F. Mettee, Jr., Maurice F. Mettee and Vivian F. Mettee, appeal the trial court’s final judgment granting the claims for equitable apportionment and ejectment filed by appellees, Michael and Carlene Raim, in the underlying boundary-dispute litigation, and denying appellants’ counterclaim for adverse possession. We reverse and remand.
We reverse the lower court’s finding for the Raims on Count I and direct that this finding be struck, since the court found for the Raims on only part of that count. Under Count I, the Raims requested that all of the Mettees’ claims of ownership to the right-of-way be rejected and that certain property located between their property and that of the Mettees be equitably apportioned. The court did the former, but did not explicitly apportion the property, because it found that the county still owned the 30-foot strip that had not been properly abandoned and disclaimed. Because the trial court has not determined the issues as identified further in this opinion, the judgment cannot be construed as holding that the existing boundary between the properties itself constitutes an equitable apportionment of the right-of-way.
We also reverse and remand for further proceedings the lower court’s finding for the Raims on Count II of their complaint, wherein they sought ejectment of the Mettees from their property, because this finding is dependent upon a proper resolution of appellants’ counterclaim for adverse possession.
Finally, in regard to the lower court’s finding against appellants on their counterclaim for adverse possession, we similarly reverse and remand for further findings, because it is unclear from the final judgment the basis for the court’s ruling.
The remainder of this opinion addresses only the propriety of appellants’ claim of adverse possession. The Mettees argue that they acquired title by adverse possession un *806 der color of title, pursuant to the terms of their 1959 deed, to the tip of the triangular lot conveyed to the Raims,[1] and to the right-of-way, later vacated by Okaloosa County, by adverse possession without color of title.[2] As to their former claim, the trial court made no explicit finding thereon. The language in the deed conveying lot 14A to the Mettees described the property as a 100-foot wide parcel running from Choctawhatchee Bay to Calhoun Avenue. It is not clear from the record whether the reference in the deed to “Calhoun Avenue” includes all the land in Lot 14A between Choctawhatchee Bay on the west and extending on the east to the western boundary of existing Calhoun Avenue, which the Mettees fenced in 1978, or whether their boundary line extended eastward only to the right-of-way of the avenue. The lower court must therefore decide on remand whether the Mettees established that their 1959 deed provided them with a description that is legally sufficient to encompass the triangular tip at issue. See Mitchell v. Moore, 152 Fla. 843, 13 So.2d 314 (1943) (en banc).
As to their claim seeking adverse possession without color of title to a portion of property formerly held by the United States or Okaloosa County as right-of-way lands adjoining Calhoun Avenue, the Mettees fenced and returned such property for taxes in 1978, the year that Okaloosa County vacated its interest in the right-of-way, and every year thereafter, as required by section 95.18 Florida Statutes (1977). As to this claim, we note that several issues exist which the trial court did not explicitly address in the final judgment, one being whether Okaloosa County had title to any portion of the right-of-way which it vacated. Despite Okaloosa County’s attempt to abandon and disclaim all of its interest in the right-of-way west of the existing Calhoun Avenue and east of Lots 14A and 14B (owned by the Raims), the evidence discloses that the United States held title to at least a portion of the right-of-way until 1984. In fact, the trial court found that title to 30 feet of the right-of-way east of the Mettees’ property is still vested in Okaloosa County, because the county could not abandon and disclaim interest in property owned by the United States. Although this part of the court’s judgment is not an issue on appeal, the court failed to resolve, and the record does not reveal, whether the United States or Okaloosa County owned the remainder of the right-of-way, and whether, if the county had title to same, it legally vacated the remaining portion in 1978.
To conclude, we reverse the lower court’s finding for the Raims on Count I of their complaint and direct that such finding be struck. We reverse as well the finding for the Raims on Count II and the finding against the Mettees on their counterclaim for adverse possession, and remand the case for further findings consistent with this opinion. If the trial court deems that resolution of the issues required on remand would be facilitated by the submission of additional evidence, it may, in its discretion, so order.
REVERSED AND REMANDED.
BOOTH and LAWRENCE, JJ., concur.

. As the Mettees did not return the property for taxes within one year after they went into possession in 1959, as required by section 95.18, Florida Statutes, they recognize they have no valid claim to adverse possession without color of title to this piece of property.

. Recognizing the rule that title by adverse possession cannot be obtained against a governmental entity, the Mettees base their claim to adverse possession without color of title to that portion of the right-of-way property which they assert the United States did not own in 1978, when Okaloo-sa County vacated its interest in the right-of-way to adjoining property owners, including the Met-tees.